# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ROSE MARIE NESBITT CAIN,** ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **4:20-cv-924-CLM** |
| ) | |
| **KILOLO KIJIKAZI,** ) | |
| **Acting Commissioner** ) | |
| **of the Social Security** ) | |
| **Administration,** ) | |
|     **Defendant.** ) | |

## MEMORANDUM OPINION

Rose Marie Nesbitt Cain seeks Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Cain's application in an opinion written by an Administrative Law Judge ("ALJ"). Cain argues: (1) that the ALJ failed to give proper weight to the opinions of her treating physician, Dr. James McCain; (2) that the ALJ erred in finding that she can perform light work; and (3) that the ALJ's decision to deny benefits lacks the support of substantial evidence.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

## I. Statement of the Case

### A. Cain's Disability, as told to the ALJ

Cain was 51 years old at the time of her alleged disability onset date. R. 230. Cain has a seventh-grade education and past work experience as a certified nursing assistant at a nursing home. R. 242.

At the ALJ hearing, Cain testified that she cannot work because she gets stressed easily. R. 69. Cain also stated that she has an overactive bladder and is prone to getting urinary tract infections. R. 70–71. Cain's heart will sometimes beat really fast. R. 71. So she has a pacemaker, which is supposed to adjust her heart rate. *Id.* And Cain's doctor put her on medicine for high blood pressure. *Id.*

Cain also suffers from neck and knee pain. R. 72–73. In 2017, Cain had neck fusion surgery, and she takes Tramadol for her neck pain. R. 72. To help ease Cain's knee pain, her doctor prescribed her muscle relaxers. R. 72–73. And Cain once went to physical therapy for her knee problems. R. 73.

Cain lives with her husband and 16-year-old child. R. 64. And Cain says that she pretty much just sits and watches TV all day. R. 79. According to Cain, she cannot lift anything over 10 pounds. R. 76. But her doctors haven't placed any kind of restrictions on her activities. R. 74. And Cain does light housework, such as laundry, dishes, and sweeping the floor. R. 77. Cain also goes grocery shopping with her daughter, who helps her lift some of the groceries. *Id.*

**B.    Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 416.920(a), 416.920(b) (Step 1); 20 C.F.R. § 416.920(c) (Step 2); 20 C.F.R. §§ 416.920(d), 416.925, 416.926 (Step 3); 20 C.F.R. § 416.920(e-f) (Step 4); 20 C.F.R. § 416.920(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

## C.    Cain's Application and the ALJ's Decision

The SSA reviews applications for SSI in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 416.1400(a)(1-4).

Cain applied for SSI in July 2017, claiming that she was unable to work because of various ailments, including heart problems and arthritis. After receiving an initial denial in August 2017, Cain requested a hearing, which the ALJ conducted in May 2019. The ALJ ultimately issued an opinion denying Cain's claims in July 2019. R. 42–53.

At Step 1, the ALJ determined that Cain was not engaged in substantial gainful activity and thus her claims would progress to Step 2.

At Step 2, the ALJ determined that Cain suffered from the following severe impairments: hypertensive vascular disease and osteoarthrosis and allied disorders.

At Step 3, the ALJ found that none of Cain's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Cain's residual functional capacity.

The ALJ determined that Cain had the residual functional capacity to perform light work with these added limitations:

- Cain can climb ramps and steps occasionally.

- Cain can never climb ladders, ropes, or scaffolds.

- Cain can balance, stoop, kneel, crouch, and crawl occasionally.

- Cain can reach overhead bilaterally occasionally.

- Cain can use foot controls bilaterally occasionally.

- Cain must avoid concentrated exposure to extreme heat, humidity, dust, odors, fumes, and pulmonary irritants.

- Cain must avoid all exposure to unprotected heights and magnetic fields.

- Normal work breaks will accommodate Cain's time off-task.

At Step 4, the ALJ found that Cain could not perform her past relevant work. At Step 5, the ALJ determined that Cain could perform jobs, such as mail clerk, inspector hand packager, and electrical accessory assembler, that exist in significant numbers in the national economy and thus Cain was not disabled under the Social Security Act.

Cain requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.     Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.    Legal Analysis

Cain makes three arguments for why the ALJ erred in finding her not disabled. First, Cain argues that the ALJ failed to give the proper weight to the opinions of her treating physician, Dr. James McCain. Second, Cain asserts that the ALJ erred in finding that she has the residual functional capacity to perform light work. Finally, Cain contends that substantial evidence doesn't support the decision to deny benefits because the ALJ relied on an inaccurate and incomplete hypothetical question to the vocational expert. The court will address each argument in turn.

### A. Dr. McCain's Opinion Evidence

Cain first asserts that the ALJ had to afford the opinions of her treating physician, Dr. McCain, substantial or considerable weight absent good cause to disregard his opinions. That's the rule that applies to claims filed before March 27, 2017. But Cain filed for SSI in July 2017. And under the regulations that apply to claims filed on or after March 27, 2017, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *See* 20 CFR § 416.920c(a).

1. Applicable legal framework: Cain concedes that the new regulations no longer require an ALJ to defer to a treating physician's opinion. But she argues that these new regulations didn't abolish Eleventh Circuit precedent on the treating physician rule. As this court has recently explained, nothing within the Social Security Act mandates the treating physician rule. *See Douglas v. Saul*, 2021 WL 2188198, at *4 (May 28, 2021). So the SSA could implement regulations that did away with the hierarchy of medical opinions. *See id.* And Cain doesn't assert that the 2017 regulations are arbitrary, capricious, or otherwise invalid. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 845 (1984) (courts must defer to validly adopted regulations). The court will thus apply the 2017

regulations—not the treating physician rule—to the ALJ's evaluation of the opinion evidence.[1]

Under the new regulations, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 CFR § 416.920c(b)(2). The ALJ may, but need not, explain how he considered other factors, such as the medical source's relationship with the claimant and specialization, when assessing a medical opinion. *See id.* "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 CFR § 416.920c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 CFR § 416.920c(c)(2).

2. Dr. McCain's Opinions: Dr. McCain is Cain's treating physician from Quality of Life Health Services. In May 2019, Dr. McCain filled out a physical capacities form on Cain's behalf. R. 881. According to Dr. McCain, he expected

---

[1] In several other cases pending before this court, Cain's counsel has filed notices of supplemental authority, which assert that *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094 (11th Cir. 2021), establishes that this court's analysis under the new regulations should be much like its analysis under the treating physician rule. But the claimant in *Simon* filed for benefits in March 2015. *Id.* at 1104 n.4. So the court didn't "consider how the new regulations bear[ ] upon [its] precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise." *Id.*

Cain to be lying down, sleeping, or sitting with legs propped at waist level or above for 5 out of 8 hours in an 8-hour daytime period. *Id.* He also said that he expected Cain's symptoms to cause her to miss 5 days of work in a 30-day period. *Id.* Dr. McCain then responded that Cain would be off-task 25% of the time during an 8-hour day. *Id.* According to Dr. McCain, Cain's heart condition "prevents her from doing heavy labor." *Id.* And Dr. McCain stated that Cain has chronic pain from arthritis. *Id.* Finally, Dr. McCain noted that drowsiness is a side effect of the Tramadol that Cain takes. *Id.*

The ALJ found Dr. McCain's opinions unpersuasive. R. 51. According to the ALJ, Dr. McCain's opinions contradicted treatment records that showed normal range of motion with only mildly reduced range of motion in the cervical area and no edema before January 2016. *Id.* The ALJ then noted that Cain had no edema during a March 2019 examination and that "Dr. McCain's opinion indicates that [Cain's] conditions prevent heavy labor but not a light residual functional capacity." *Id.* The ALJ also observed that "Dr. McCain did not indicate a basis for opining the amount of time off-task or the number of missed days of work." *Id.*

The ALJ then found Cain's daily life activities to contradict Dr. McCain's opinions. For example, the ALJ noted that Cain testified that she could walk three blocks and lift 10 pounds. *Id.* The ALJ then explained that Cain can extend her arms out, pick up pocket change, and pick things up off the floor. *Id.* The ALJ also noted

9

that Cain could perform her own personal care, such as shower and dress herself, prepare meals, and shop for groceries with her daughter. *Id.* And the ALJ pointed out that Cain goes to church with her son, goes out to eat, uses the internet and Facebook, and watches television all day. *Id.* Finally, the ALJ found it significant that there's "no record that Dr. McCain ever[ ] issued restrictions on [Cain's] activities." *Id.*

The ALJ's analysis of Dr. McCain's opinions shows that he applied the correct legal standard by evaluating the persuasiveness of Dr. McCain's opinions based on the factors of supportability and consistency. And substantial evidence supports the ALJ's finding that Dr. McCain's opinions weren't persuasive. As for supportability, the ALJ correctly noted that Dr. McCain didn't explain how he determined how much time Cain would be off-task or how many days she would miss work. And the ALJ reasonably concluded that Dr. McCain's statement that Cain's heart condition stopped her from performing heavy labor didn't mean that she couldn't perform light work. Finally, substantial evidence supports the ALJ's finding that Dr. McCain's treatment records—which don't record restrictions being placed on Cain's activities and show a mostly normal range of motion—don't align with the opinions expressed in the physical capacities form. *See* R. 749, 834, 844, 865, 874.

As for the consistency factor, it was reasonable for the ALJ to conclude that medical records that showed that Cain didn't complain of edema until January 2016 and didn't show signs of edema in March 2019 contradicted Dr. McCain's opinion that Cain needed to have her legs propped up for 5/8 daytime hours. R. 874. And substantial evidence supports the ALJ's finding that Dr. McCain's opinions contradicted Cain's reported daily activities. *See* R. 76–79.

Cain's argument that the ALJ erred focuses on the length of her treating relationship with Dr. McCain and Quality of Life. But a medical source's relationship with the claimant is only one of several factors that ALJs consider when evaluating a medical opinion. *See* 20 CFR § 416.920c(c)(3). And unlike the supportability and consistency factors, the ALJ didn't need to explain how he considered the relationship factor. *See* 20 CFR § 416.920c(b)(2). Plus, though Cain asserts that clinical and laboratory findings from Quality of Life support Dr. McCain's opinions, it's not this court's job to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Having reviewed the evidence, the court finds that a reasonable person could conclude, as the ALJ did, that Dr. McCain's opinions lacked supportability and conflicted with the other record evidence. So substantial evidence supports the ALJ's decision to find Dr. McCain's opinions unpersuasive.

### B.     Residual Functional Capacity Assessment

Cain next asserts that the ALJ's residual functional capacity assessment was deficient. This argument has three parts.

1. <u>Substantial evidence</u>: Cain first argues that the ALJ's residual functional capacity assessment is conclusory and lacks the support of substantial evidence. But as shown below, the ALJ's residual functional capacity assessment is not conclusory. Nor does the ALJ's finding that Cain could perform a range of light work lack the support of substantial evidence.

The SSA's regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 416.967. Even so, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The ALJ supported his finding that Cain could perform light work with added limitations by pointing to Cain's objective medical records, Cain's daily activities, and the State agency medical consultant's opinion on Cain's functional limitations.

As the ALJ recognized, Cain has a history of chronic cervical spondylosis with associated degenerative disc disease. R. 47. She also suffers from heart disease, high blood pressure, and hyperlipidemia. R. 47–50. But as the ALJ noted throughout his decision, despite these impairments, Cain's medication and pacemaker stabilized

her heart issues, and she had only mildly reduced range of motion in her extremities. R. 361, 363, 394–95, 594, 614–17, 749, 785, 834, 844, 865, 867, 874. And though Dr. McCain diagnosed Cain with recurrent, localized edema in January 2019, (R. 856), the other physical examinations in the record rarely revealed signs of edema.

The ALJ also supported his residual functional capacity assessment by pointing to Cain's daily activities. For example, the ALJ noted that Cain testified that she could extend her arms out in front of her and lift them above her head. R. 76. And Cain said she could stoop down and pick things up off the floor. R. 76–77. As the ALJ also pointed out, Cain gets dressed without help, prepares meals, does light housework, and goes grocery shopping with her daughter. R. 77. Plus, Cain's doctors haven't restricted her activities, and Cain testified that she could walk three blocks and lift 10 pounds. R. 74, 76.

Finally, the ALJ supported his residual functional capacity assessment by pointing to the opinions of Dr. Hogan, a state agency medical consultant. As the ALJ noted, Dr. Hogan found that Cain could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. R. 124. Dr. Hogan also determined that Cain could stand/walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday. *Id.* Dr. Hogan then stated that Cain needed several postural limitations, such as never climbing ladders/ropes/scaffolds and only occasionally climbing ramps and stairs. *Id.* The ALJ found Dr. Hogan's opinions persuasive, concluding

that they were consistent "with the longitudinal medical record showing intermittent problems with gait and mildly reduced range of motion." R. 50–51.

A reasonable person could look at this evidence and agree with the ALJ's finding that Cain can perform light work with several added limitations. And Cain cites no evidence that would compel the conclusion that she has more severe limitations than those the ALJ assessed. Instead, Cain simply states, without further elaboration, that there is no evidence she can perform light work.

Having reviewed the evidence, the court finds that the ALJ adequately accounted for all Cain's functional limitations when assessing her residual functional capacity. In short, substantial evidence supports the ALJ's residual functional capacity assessment.

2. SSR 96-8p: Cain also contends that the ALJ failed to discuss her ability to perform sustained work activities in an ordinary workday like the social security regulations require. An ALJ's residual functional capacity finding "must include a narrative discussion describing how the evidence supports the ALJ's conclusion, citing specific medical facts and nonmedical evidence and discussing the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." *Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 29122477, at *7 (11th Cir. July 12, 2021) (citing SSR 96-8p). The ALJ also needs to: (1) explain how he resolved "material inconsistencies or ambiguities" in the record, and (2)

"include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted." SSR 96-8p, 1996 WL 374184.

After reviewing the ALJ's hearing decision, the court finds that he complied with SSR 96-8p's requirements. The ALJ discussed in narrative form the record evidence and how this evidence contradicted Cain's allegations that her impairments were disabling. R. 45–51. In this discussion, the ALJ cited specific medical facts, including Cain's treatment notes and the opinions of several physicians. *Id.* The ALJ also discussed nonmedical evidence, such as Cain's hearing testimony about her daily life activities. *Id.* And in evaluating Dr. Hogan's opinions, the ALJ explained how the medical records corresponded with the functional limitations that the ALJ ultimately assessed. R. 50–51. For example, the ALJ explained that evidence that Cain had intermittent problems with her gait and a mildly reduced range of motion supported limiting Cain to a range of light work. *Id.*

And even when an ALJ could have been "more specific and explicit" in his findings about a claimant's functional limitations and work-related abilities, he satisfies SSR 96-8p by discussing the relevant evidence in the record and citing the regulations that define the exertional demands of the claimant's residual functional capacity. *See Casteel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009); *Freeman v. Barnhart*, 220 F. App'x 957, 959–60 (11th Cir. 2007).

As explained above, the ALJ thoroughly discussed Cain's medical records, evidence of Cain's daily life activities, Cain's hearing testimony, and the opinion evidence. R. 45–51. Plus, the ALJ cited the regulation that defines the exertional demands of light work. R. 45. So the ALJ satisfied the requirements of SSR 96-8p.

3. <u>Physical capacities' evaluation</u>: Cain finally contends that the ALJ needed to rely on a physical capacities' evaluation from either an examining or treating physician to make his residual functional capacity assessment. This argument fails. At the hearing level, the ALJ, not doctors, has the sole responsibility of assessing a claimant's residual functional capacity. 20 CFR § 416.946(c). So while an ALJ must consider a medical source's opinion when assessing a claimant's residual functional capacity, the ALJ needn't base his residual functional capacity findings on a physician's opinion. *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014).

\* \* \*

To sum up, the ALJ complied with the SSA's requirements for evaluating a claimant's residual functional capacity. And substantial evidence supports the ALJ's residual functional capacity assessment. So the court rejects Cain's argument that the ALJ's residual functional capacity assessment was deficient.

### C. Hypothetical Question to Vocational Expert

Cain finally contends that the ALJ erred in relying on the vocational expert's testimony because the hypothetical question to the vocational expert wasn't based on a correct or full statement of her limitations and impairments.[2] According to Cain, the hypothetical question to the vocational expert didn't account for several of her heart conditions, her high blood pressure, her severe neck pain, her high cholesterol, her severe left knee pain, and her frequent urination.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180. But if substantial evidence supports the ALJ's finding that the claimant does not have a particular limitation, the ALJ need not include that limitation in her hypothetical question to the vocational expert. *Crawford*, 363 F.3d at 1161.

The hypothetical question that the ALJ relied on to find that Cain could work included all the limitations assessed in Cain's residual functional capacity. And Cain hasn't explained what functional limitations the ALJ should have added to his hypothetical question. Plus, the ALJ didn't need to include references to Cain's

---

[2] Cain's brief also includes the conclusory statement that "[t]he decision to deny benefits was not based on substantial evidence because the ALJ improperly applied the pain standard." Doc. 10 at 47. Cain's failure to expound upon this argument means that she has abandoned it. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–83 (11th Cir. 2014).

17

diagnoses or impairments in the hypothetical question. *See England v. Astrue*, 590 F.3d 1017, 1023 (8th Cir. 2007). So Cain hasn't shown that the hypothetical question failed to accommodate her physical impairments.

The court also notes that in most of the cases Cain cites the hypothetical question was deficient because it didn't provide accommodations for the claimant's mental impairments when the ALJ found at Step 2 that the claimant had moderate limitations in maintaining concentration, persistence, and pace. *See, e.g.*, *Winschel* 631 F.3d at 1181. But here, the ALJ considered both Cain's severe and non-severe impairments when fashioning her residual functional capacity. R. 45–51. So the facts of the cases Cain cites don't apply here. In short, the court sees no error in the ALJ's hypothetical question to the vocational expert.

### IV. Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on January 31, 2022.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE